NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MARK W. GUTTENBERG,**
*Petitioner*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent*

---

2025-1081

---

Petition for review of the Merit Systems Protection Board in No. DE-0752-23-0042-I-1.

---

Decided: August 5, 2026

---

JEFFREY H. JACOBSON, Jacobson Law Firm, Tucson, AZ, argued for petitioner.

STEPHANIE FLEMING, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY, BRETT SHUMATE.

---

Before DYK and REYNA, *Circuit Judges*, and BISSOON, *Chief District Judge*.[1]

BISSOON, *Chief District Judge*.

Mark W. Guttenberg petitions for review of a Merit Systems Protection Board ("Board") decision upholding his removal from service for conduct unbecoming a deportation officer and lack of candor. We *affirm*.

## BACKGROUND

In 2006, the Department of Homeland Security Immigration and Customs Enforcement ("agency") hired Mr. Guttenberg as an Immigration Enforcement Agent in Phoenix, Arizona. At some point thereafter, his title changed to Deportation Officer. Mr. Guttenberg remained employed as a Deportation Officer, a law enforcement position, until his removal from federal service.

On or about October 11, 2020, Mr. Guttenberg discovered that his vehicle had been burglarized while parked in his home garage and that personal items, including his law enforcement credential wallet, badge, and government travel card, had been stolen.

After reporting the theft to his supervisor and calling 911, Mr. Guttenberg, along with his roommate and a female friend, Cayanne Nelson, began searching the neighborhood for the items. While searching through trash bins near a single-story apartment building, the trio encountered apartment resident Cameron Bradford. Mr. Bradford told Mr. Guttenberg to "get the fuck out of my trash can," and a verbal altercation between the two ensued. J.A.

---

[1]    Honorable Cathy Bissoon, Chief District Judge, United States District Court for the Western District of Pennsylvania, sitting by designation.

1843.[2] Although the altercation never became physical, Mr. Guttenberg admits exchanging words and that he knocked over Mr. Bradford's recycling bin at one point, after which Mr. Bradford stepped back out of his sandals.

Mr. Bradford headed back toward his apartment, and Mr. Guttenberg asked him if he was going to get a gun, adding something like, "You better get a gun." J.A. 2301. Mr. Bradford returned with a cell phone, called 911, and reported the incident. Mr. Bradford alleged that, before he called the police, Mr. Guttenberg threw his sandals onto the apartment roof. Mr. Guttenberg denied doing so. The responding officers interviewed Mr. Bradford, Mr. Guttenberg, and other witnesses about what occurred. Mr. Bradford declined to press charges, and Mr. Guttenberg was not arrested, although he was warned not to trespass on Mr. Bradford's property. The officers also took Mr. Guttenberg's statement as to the earlier theft of the items from his car.

Mr. Guttenberg did not report the October 11, 2020 altercation to the agency. The agency learned of the incident on or about October 26, 2026, when it obtained the police report in the course of investigating the theft of Mr. Guttenberg's government property.

After conducting phone interviews to obtain additional information, the agency referred the matter to the Office of Professional Responsibility ("OPR"). The OPR investigator reviewed the previously obtained police reports, body camera footage, and summaries of witness interviews. He also interviewed Mr. Guttenberg under oath. On February 9, 2021, the investigator issued a Report of Investigation that considered each of three allegations: (1) that Mr. Guttenberg failed to report off-duty contact with law enforcement;

---

[2]    Citations to "J.A." refer to the Joint Appendix filed by the parties at Dkt. No. 25.

(2) that he was verbally confrontational towards a civilian and law enforcement during the incident; and (3) that he failed to safeguard his Government-issued items. The Report referred these three allegations to management for consideration of agency action.

On September 2, 2021, the Deputy Field Office Director proposed removal of Mr. Guttenberg from service for (1) failure to safeguard Government property, (2) conduct unbecoming a Deportation Officer, and (3) failure to report off-duty contact with law enforcement. Mr. Guttenberg responded to the proposed removal in writing. On March 24, 2022, the agency rescinded the September 2021 notice and issued a notice re-proposing removal based on three reasons: (1) conduct unbecoming a Deportation Officer; (2) failure to report off-duty contact with law enforcement; and (3) lack of candor.

The conduct unbecoming an officer charge contained three specifications: (1) kicking over the trash bin and violating applicable city code provisions prohibiting searching through legally placed trash bins without permission; (2) the aggressive conduct toward Mr. Bradford; and (3) the "uncooperative and argumentative conduct," J.A. 215, toward the responding officer. The failure to report charge contained one specification: violation of agency policy requiring agency officers to report within 48 hours certain off-duty contact with local law enforcement. The lack of candor charge contained two specifications based on Mr. Guttenberg's failure to disclose to the responding officer and the OPR investigators respectively that he threw Mr. Bradford's sandals onto the roof. The proposal noted that the agency "depends on the public's trust in [its] law enforcement staff to treat members of the public with dignity, professionalism, and care, even in the face of provocation," J.A. 216, and concluded that Mr. Guttenberg's conduct failed to comply with the agency's Employee Code of Conduct.

The proposal found that the lack of candor reason alone would justify Mr. Guttenberg's removal. Even absent that reason, based on the conduct unbecoming charge, the investigator felt that removal "would still be appropriate because of [Mr. Guttenberg's] record of prior discipline, pattern of conduct unbecoming towards members of the public and persons in position of authority, and lack of remorse." J.A. 218. Mr. Guttenberg's prior disciplinary history included a nine-day suspension for an August 2013 incident in which he insulted Department of Motor Vehicle workers and "flashed [his] badge to attempt to get them to more promptly process [his] transfer of title request," J.A. 217, and a five-day suspension for a March 2019 incident in which he handcuffed Ms. Nelson and called 911 in the course of a self-described "citizen's arrest," *id.* When the responding officer notified Mr. Guttenberg he considered him a potential suspect for domestic violence and disorderly conduct toward Ms. Nelson, Mr. Guttenberg repeatedly invoked his own status as a law enforcement officer in an attempt to avoid scrutiny. The report concluded that Mr. Guttenberg could not be rehabilitated because he had "failed to accept any responsibility for what had happened or acknowledge wrongdoing." J.A. 218. Mr. Guttenberg responded to the proposal both orally and in writing, incorporating by reference his objections to the prior rescinded notice.

On July 11, 2022, the agency's deciding official sustained both the conduct unbecoming and lack of candor charges, including all associated specifications. The official did not sustain the failure to report charge because the record did not establish that Mr. Guttenberg was aware that he was required to report that type of off-duty contact with law enforcement.

In determining the appropriate penalty, the deciding official turned to the factors outlined by *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981), including the

mitigating factors of Mr. Guttenberg's fifteen years of federal employment; his strong performance reviews; all letters of support from his coworkers; and his personal stress at the time of the incident. The official determined that none of the mitigating factors "outweigh[ed] the seriousness of [Mr. Guttenberg's] misconduct and its negative impact on [his] ability to testify on behalf of the [a]gency in civil or criminal proceedings." J.A. 66. The official further concluded that each of the conduct unbecoming or lack of candor charges, by itself, would be sufficient to support removal. The official found Mr. Guttenberg's "entrenched pattern" of misconduct "deeply troubling" and did not believe that he could be rehabilitated because his two instances of prior discipline proved ineffective and because he had failed to "acknowledge genuine responsibility for [his] misconduct." *Id.* Mr. Guttenberg signed and acknowledged receipt of the removal decision on July 11, 2022, and was removed from federal employment.

Mr. Guttenberg appealed his removal to the Board. Following a hearing, the administrative judge ("AJ") sustained the two charges against Mr. Guttenberg, found that the agency proved the nexus between the misconduct and the efficiency of the service, and upheld the penalty of removal. The AJ also considered and rejected Mr. Guttenberg's argument that the agency failed to provide him due process of law.

Mr. Guttenberg petitioned for full Board review of the AJ's initial decision. On August 16, 2024, the Board affirmed the initial decision, and it became the Board's final decision. Mr. Guttenberg timely petitioned for review of the final decision to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We may set aside the Board's decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). "We review the Board's legal decisions de novo and its findings of fact for substantial-evidence support." *Reyes v. Merit Sys. Prot. Bd.*, 159 F.4th 1356, 1359 (Fed. Cir. 2025). "The petitioner bears the burden of establishing error in the Board's decision." *Harris v. Dep't of Veterans Affs.*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

I

Mr. Guttenberg first argues that his due process rights were violated because the agency, before terminating his employment, failed to disclose the *Douglas* factors analysis, failed to consider his prior written responses, failed to conduct a reasonable inquiry into missing evidence, and impermissibly stacked the lack of candor specifications. These arguments are without merit.

The Board correctly held that no due process violation occurred. Due process dictates that a deciding official is not allowed to consider—either in connection with the charge itself or the penalty—new and material information he obtained *ex parte*. *Ward v. U.S. Postal Serv.*, 634 F.3d 1274, 1280 (Fed. Cir. 2011). Information is considered having been obtained *ex parte* if the appellant was not informed it would be taken into account. *Lopes v. Dep't of the Navy*, 116 M.S.P.R. 470, 475 (2011). We have set forth three factors relevant to whether a due process violation has occurred because of consideration of information not included in the notice of proposed removal: 1) whether the information is new or merely cumulative; 2) whether the employee knew of the error and had an opportunity to respond; and 3) whether information was of the type likely to result in undue pressure on the deciding official to rule in a particular manner. *Stone v. FDIC,* 179 F.3d 1368, 1377 (Fed.Cir.1999).

That Mr. Guttenberg was not provided a copy of the deciding official's *Douglas* factors worksheet until he filed his appeal does not implicate due process. As the Board found, the checklist was not an evidentiary document that the deciding official received in determining an appropriate penalty. Rather, he created the list as part of the decision-making process through which he analyzed evidence otherwise of record. Thus, due process did not entitle Mr. Guttenberg to review and reply to the document.

That the deciding official did not consider Mr. Guttenberg's written response to the rescinded notice of proposed removal, or the affidavit from Ms. Nelson attached thereto, likewise does not violate due process. It is undisputed that Mr. Guttenberg failed to supply copies of those documents to the deciding official and merely incorporated them by reference. It also is uncontested that the deciding official was not involved in the first proposed removal action and, thus, had no prior familiarity with those materials. We agree with the AJ that the "incorporation by reference" language did not serve to add documents to the record before the deciding official. Mr. Guttenberg was permitted to provide written and oral replies to the March 2022 proposed removal, and the deciding official considered those submissions. If Mr. Guttenberg wanted the deciding official to consider the materials at issue, he could have attached them.

Mr. Guttenberg's challenge to the sufficiency of the agency's inquiry into the "lack of photographic evidence" that he threw Mr. Bradford's flip-flops onto the roof does not raise due process concerns. As Mr. Guttenberg acknowledges in his brief, whether an agency's investigation is thorough is not a proper basis for determining whether a charge or specification is sustained. *Uske v. U.S. Postal Serv.*, 60 M.S.P.R. 544, 550 (1994); *aff'd*, 56 F.3d 1375 (Fed. Cir. 1995); *Soc. Sec. Admin. v. Carr*, 78 M.S.P.R. 313, 334 (1998). The fact that original photographs of the flip-flops were not produced is immaterial. The record included body-cam footage and pdf versions of the photos,

and the AJ found no reason to doubt their authenticity. The Court may not substitute its judgment for that of the Board as to the weight of the evidence or the inferences to be drawn. *Cross v. Dep't of Transp.*, 127 F.3d 1443, 1448 (Fed. Cir. 1997). Mr. Guttenberg has not identified any duty or procedure breached by the agency or any harm to himself caused by the consideration of the photographs in the form presented.

Mr. Guttenberg's final "due process" challenge – that the two lack of candor specifications were duplicative and should have been merged – is of no moment. Although both specifications involve the flip-flop incident, they concern not the throwing of the shoes, but Mr. Guttenberg's lies about the same. Because the misrepresentations were made to two different entities—the police (specification 1) and the OPR investigators (specification 2)—they were not duplicative and did not violate due process.

## II

Mr. Guttenberg next challenges the board's finding of a nexus between his off-duty conduct and the efficiency of the service. We disagree. The Board's test for nexus in off-duty misconduct cases requires:

(1) a rebuttable presumption of nexus that may arise in "certain egregious circumstances" based on the nature and gravity of the misconduct,

(2) a showing by preponderant evidence that the misconduct adversely affects the employee's or his coworkers' job performance or management's trust and confidence in the employee's job performance, [or]

(3) a showing by preponderant evidence that the misconduct interfered with or adversely affected the agency's mission.

*Kruger v. DOJ*, 32 M.S.P.R. 71, 74 (1987). We review the Board's nexus findings for substantial evidence. *Brown v. Dep't of the Navy*, 229 F.3d 1356, 1358–59 (Fed. Cir. 2000).

Here, the AJ found that the agency established by preponderant evidence that Mr. Guttenberg's misconduct adversely affected his ability to perform his job duties and the agency's trust and confidence in his ability to do so. Substantial evidence supports this finding. As the AJ explained, Mr. Guttenberg's duties included interacting with law enforcement officers from outside the agency, and his uncooperative interactions with the responding officer on October 11, 2020 could impact his ability to interact with such officers in the future. Additionally, Mr. Guttenberg's lack of candor in speaking with the officer is potential impeachment information that the agency would have to disclose to prosecutors under its policies, rendering him *Giglio*-impaired. Because the AJ did not rely on prong one of the nexus test, the "egregiousness" element on which Mr. Guttenberg focuses is irrelevant.[3]

Mr. Guttenberg's additional arguments challenge the sufficiency of the evidence and credibility determinations. Under the governing deferential standard of review, however, it is not our task to reweigh the evidence. *See Jones v. Dep't of Health & Hum. Servs.*, 834 F.3d 1361, 1369 (Fed. Cir. 2016). Here, the AJ applied all appropriate evidentiary standards and, as set forth above and in her written decision, supported her factual findings with substantial evidence. In addition, the AJ meticulously applied the applicable credibility criteria set forth in *Hillen v. Depart-*

---

[3]    The AJ further found that the agency established the requisite nexus with respect to the appellant's *on-duty* misconduct in lacking candor during an interview with OPR.

*ment of the Army*, 35 M.S.P.R. 453, 458 (1987), to the witness testimony, including the testimony of Mr. Bradford. An AJ's credibility determinations are "virtually unreviewable on appeal," *Briley v. Nat'l Archives & Recs. Admin.*, 236 F.3d 1373, 1377 (Fed. Cir. 2001), and "[f]indings that turn on credibility are upheld unless the quality and weight of the evidence are such that no reasonable trier of fact" could reach the contested conclusion, *Morgan v. Dep't of the Army*, 934 F.2d 310, 312 (Fed. Cir. 1991). Although Mr. Guttenberg naturally prefers his self-serving version of events, he offers no basis to disturb the AJ's well-reasoned credibility determinations in this case.

## CONCLUSION

We have considered Mr. Guttenberg's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the final judgment of the Merit Systems Protection Board.

## AFFIRMED

## COSTS

No costs.